**MONTANA SNOWMOBILE ASSOCIATION; the Town of Superior; and the Blueribbon Coalition, Inc. Plaintiff,**

v.

**Charles C. WILDES, et al., Defendants,**

and

**Montana Wilderness Assoc., Defendant–Intervenors.**

**No. CV 99–4–M–DWM.**

United States District Court, D. Montana, Missoula Division.

Feb. 9, 2000.

Jon Metropoulos, Rebecca W. Watson, Gough, Shanahan, Johnson & Waterman, Helena, MT, Susan E. Buxton, Paul A. Turcke, Moore Smith Buxton & Turcke, Boise, ID, for Montana Snowmobile Association, the Town of Superior, Blue Ribbon Coalition, Inc., plaintiffs.

William W. Mercer, Office of the U.S. Attorney, Missoula, MT, for Charles C. Wildes, Dale Bosworth, USFS, an Agency of the United States, defendants.

Jack R. Tuholske, Attorney at Law, Missoula, MT, for Montana Wilderness Association, Inc., Great Burn Study Group, the Wilderness Society, Inc., Friends of the Bitterroot, Inc., the Sierra Club, Inc, intervenors.

## ORDER

MOLLOY, District Judge.

At the pretrial conference in this matter, the parties agreed that the Court would entertain a motion for summary judgment filed by the defendant. The parties stipulated that the prevailing party on the motion for summary judgment is entitled to judgment as a matter of law. Cross motions for summary judgment were filed by all parties and were fully briefed. Oral argument took place on February 3, 2000. For the reasons set forth below, I find in favor of defendants.

### I. Background

Plaintiffs challenge the Forest Service's closing of certain areas of the Lolo National Forest to snowmobile use in a five count amended complaint. The complaint alleges violations of the National Environmental Policy Act (NEPA), the National Forest Management Act (NFMA), the Administrative Procedures Act, and the Wilderness Act.

The National Forest Management Act was enacted in 1976. In 1978, the Lolo National Forest began the process to develop the Lolo National Forest Land and Resource Management Plan (the Forest Plan). The Forest Plan states that it is "the single land management plan for the Lolo National Forest." (Stipulated Facts, # 1). Motorized use of roadless areas, including snowmobile use, was addressed throughout the planning process. A Draft EIS was issued in 1980. Revised Drafts were issued in 1982 and 1985. All were the subject of public comment and agency review. The record shows plaintiffs knew about, and participated in, the public input to the planning process. A Final EIS was issued in February, 1986, resulting in a Record of Decision issued in April of 1986 that adopted the Forest Plan.

The Forest Plan divides the 2,112,597 acres of the Lolo Forest into twenty eight (28) Management Areas (MA). Chapter III of the Forest Plan, entitled "Management Area Direction," describes each man-

agement area and lists the "goals, managements standards, schedule of management practices, and monitoring requirements for each area." (A.R., Volume II, III–32) The dispute in this case concerns the management of two areas, denoted as MA 11 and MA 12.

**MA 11:** This management area constitutes blocks of land scattered across the Lolo National Forest totalling 169,982 acres. The Forest Plan describes MA 11 as follows: "This Management Area consists of large, roadless blocks of land distinguished primarily by their natural environmental character." Most significant to the issue here is the unequivocal language in the Forest Plan which states:

"There is no motorized access permitted in this Management Area except for development of mineral resources. Public use may be restricted." (A.R., Volume II, 111–32)

**MA 12:** This management area includes all wilderness areas and other roadless areas within the Lolo National Forest. That portion of MA 12 which appears to be the subject of most of the current controversy is along the Idaho–Montana border between Lolo Pass and Lookout Pass. It is also known as "Stateline," "Hoodoo," and the "Great Burn" area.[1] The Forest Plan describes MA 12 as consisting of "the portions of the Forest that have been classified as wilderness or are proposed for wilderness classification." (A.R. Volume II, III–37)

Again, the unambiguous language of the Forest Plan describing MA 12 states:

"Motorized use is not permitted except as provided for under the Wilderness Act." *Id.*

Although the 1986 Forest Plan specifically closed MA 11 and MA 12 to motorized use except for the particular exceptions noted above, the travel plan maps issued at that time did not show that the two areas were closed to motorized use. The Lolo National Forest incrementally

changed the travel plan maps to reflect the 1986 closures over the next twelve years. Consequently, many wrong maps were promulgated and disbursed.

Snowmobile use in the disputed areas, particularly those areas of MA 11 and MA 12 along the Stateline, increased dramatically during the 1990's. The Forest Service began an Environmental Assessment (EA) to analyze the increased use. Concurrently, Defendant–Intervenor Montana Wilderness Association threatened legal action against the Lolo National Forest to enforce the Forest Plan's clear prohibition of motorized use in the areas. The Lolo National Forest then abandoned the EA, and Lolo Forest Supervisor Wildes issued a public notice on December 15, 1998 ("the Letter") restating the Forest Plan determination that both areas were closed to motorized use because the 1986 Forest Plan specifically banned such use. Noting that the travel maps were largely inconsistent with the direction set forth in the Forest Plan, Wildes concluded that "to continue to allow motorized vehicles in Management Areas 11 and 12 does not comply with forest plan direction and is legally indefensible." (A.R. Vol. II, Document V).

## II. Discussion

The thrust of the United States' and Intervenors' arguments is that the Forest Plan is clear on its face. Motorized use of either areas is not allowed except that associated with mineral development or as permitted by the Wilderness Act. Neither exception allows recreational snowmobile use under the circumstances now before me. The United States and the Montana Wilderness Association argue that the prohibition of motorized use in the areas became the "final agency action" when the Forest Plan was adopted in 1986.

Final agency action occurs with the completion of the decision making process under NEPA. A Final EIS and a Record of

---

**1.** Several MA 11 areas are also along the Stateline, but north of the Great Burn proposed wilderness area.

Decision are final agency actions. *Oregon Natural Resources Council v. Harrell,* 52 F.3d 1499, 1503 (9th Cir.1995). The parties agree that the Record of Decision adopting the Forest Plan in April of 1986 was a final agency action. The Record of Decision stated that the Forest Plan was subject to appeal pursuant to 36 CFR 211.18 within 45 days of its promulgation. Plaintiffs did not appeal even though the evidence at the hearing proved that the Montana Snowmobile Association was aware of, and participated in, the planning process that culminated with the adoption of the Forest Plan.

Plaintiffs do not challenge the planning, procedures, or decision actually made with respect to the areas in the Forest Plan. They do challenge the "site-specific decision" to close the areas to snowmobile use. In support of this argument, plaintiffs point primarily to the inconsistency between the language in the Forest Plan and the travel maps. They also rely on the notion that map depictions represent "decisions" by the Plan managers concerning land use. They argue the decision to leave the maps unchanged at the time the Forest Plan was adopted may well have been ill-advised, but it is not controlling in deciding the issue here.

The Forest Service Manual (Section 2355.03) states in pertinent part:

"The Forest Visitor Map is periodically revised to exhibit to the public the changes in travel management. The map itself is not a decision document, but rather a display of specific decisions made elsewhere based on analysis and public participation. Travel management direction for off-road vehicles and other modes of transportation shall be in accordance with Forest Plan direction. The Forest Plan sets the direction for the management of the land. When the existing travel management situation is different from Forest Plan direction,

complying with the Forest Plan direction will be accomplished as soon as practicable through implementation processes."

Plaintiffs further argue that the December 1998 Letter enforcing the Forest Plan *also* constitutes a final agency action subject to further analysis and to review pursuant to NEPA and NFMA. They argue that the December Letter was a decision that revised existing travel designations without proper notice, in violation of the travel management duties imposed pursuant to 36 C.F.R. § 295.3.

Defendants and Defendant–Intervenors have the better view on the legal significance of the Letter. The Letter is an implementation of the standards governing management of the areas, an enforcement of the Forest Plan made necessary by the increased use of the Stateline area by snowmobiles years after the decision to disallow such use had been made.[2]

It was the adoption of the Forest Plan at the conclusion of the EIS process of 1986 and not the December 1998 Letter that constituted the final agency action on motorized use in the areas. Thus, a jurisdictional issue arises. Plaintiffs' claims against the United States are governed by the general civil action statute of limitations. 28 U.S.C. § 2401(a). The statute requires that plaintiffs bring suits "within six years after the right of action first accrues." *Id.*

Plaintiffs rely on Supreme Court authority for the proposition that they could not have challenged the 1986 Forest Plan as illegally prohibiting snowmobile use since it had yet to be implemented. *Ohio Forestry v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 1670–71, 140 L.Ed.2d 921 (1998). Plaintiffs interpret *Ohio Forestry* to hold that absent concrete and imminent harm to actual activities, no justiciable decision has been made by the Forest Ser-

---

**2.** Even if this Court were to accept the view that the Letter was a final agency action, the decision to finally enforce the proscription on motorized use in MA 11 and MA 12 which is

clearly set out in the Forest Plan would not be arbitrary or capricious. Rather, the decision was compelled by law.

vice when it adopts a forest plan. I believe this is too broad a reading of *Ohio Forestry*. In that case, the Court held that a national forest's plan as to future logging (where it may occur and in what amounts) was not justiciable since it was not yet ripe for adjudication.

Noting that "the Plan does not give anyone a legal right to cut trees, nor does it abolish anyone's legal authority to object to trees being cut," no significant harm was inflicted on the interests of the Sierra Club absent actual logging. *Id.* That holding is distinguishable from the situation faced by plaintiffs in this case, since their legal rights to operate snowmobiles were impacted immediately upon adoption of the Forest Plan. Once the Forest Plan was adopted, using snowmobiles in areas M–11 and M–12 was illegal. Oversight in enforcing the Plan does not alter the timing of the justiciable decision.

*Ohio Forestry* is further distinguishable since the forest plan there required environmental review and public comment before actual tree harvest. As such, an actual timber sale would be ripe for adjudication after that process. That is markedly different than the situation presented here.

The Court in *Ohio Forestry* noted that the ripeness analysis would be "significantly different" if other types of harm such as closure of a specific area to off-road vehicles were part of the Plan. *Id.*, at 1673.

Defendants liken the situation presented in this case to that of *Cedars–Sinai Medical Center v. Shalala*, 177 F.3d 1126 (9th Cir.1999). Twenty four hospitals challenged a 1986 Medicare regulation governing payments to hospitals. The regulation was not enforced against them until 1995. The *Cedars–Sinai* court held that the action was filed beyond the six year statute of limitations governing suits against the United States since the cause of action accrued at the time the regulation was announced, not when the hospitals were injured by the enforcement. *Id.*, at 1129. "Accepting the Hospitals' argument and allowing suit whenever a regulation was

administered by a federal agency "would nullify the statute of limitations for challenges to agency orders." " *Id.*, quoting *Shiny Rock Mining Corporation v. United States*, 906 F.2d 1362, 1365 (9th Cir.1990).

In *Shiny Rock*, the Ninth Circuit held that actions brought under the Administrative Procedures Act challenging agency action must be brought within six years of when the action accrues. At issue there was the denial of a 1979 mining patent on lands withdrawn from mineral development by the Bureau of Land Management 15 years earlier. The Court held that the action accrues once notice of government action is given and interested parties acquire their right to sue, and not when actual injury occurs. *Id.* at 1365–1366.

### III. Conclusion

The reasoning of *Cedars–Sinai* and *Shiny Rock* is persuasive and provides a better fit than *Ohio Forestry* in this case. The NEPA process that led to the Record of Decision adopting the Forest Plan for the Lolo National Forest was final agency action. Interested parties were on notice that motorized use was not allowed in the areas in dispute here. The December 1998 Letter by from Supervisor Wildes was not an amendment to the plan nor was it a new decision. Rather, the letter reiterates that the decision to proscribe motorized use in the areas was made in 1986 when the Plan was adopted. The overdue enforcement of the Forest Plan is not an amendment to the Plan and it does not change the Plan.

Plaintiffs' legal right to challenge the closure of the Stateline area to snowmobile use accrued when they had notice of the closure. The triggering event was when the Record of Decision adopting the Lolo Forest Plan was published in April of 1986. The applicable statute of limitations for suits challenging matters such as this is six years. This action was filed on January 13, 1999 nearly thirteen years after the operative event, and nearly seven years after the expiration of the Statute of Limitations. I find plaintiffs' claims are too

late and are barred by the applicable statute of limitations.

Wherefore, IT IS HEREBY ORDERED that:

1) plaintiffs' motion for summary judgment (docket # 41) is DENIED;

2) defendant United States motion for summary judgment (docket # 46) that plaintiffs' action is barred by the statute of limitations is GRANTED;

3) defendant-intervenor's motion for summary judgment (docket # 27) that plaintiffs' action be dismissed with prejudice is GRANTED.